# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**STEPHANIE L. SISTRAT,**

    **Plaintiff,**

v.                                                                  Case No:   6:21-cv-1925-RBD-DAB

**ELITE AUTO SERVICES OF ORLANDO, LLC,**

    **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** MOTION FOR DEFAULT JUDGMENT (Doc. No. 17)
>
> **FILED:** August 1, 2022
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

Plaintiff Stephanie L. Sistrat moves for entry of default judgment against Defendant Elite Auto Services of Orlando, LLC for the second time, seeking to recover minimum wage and overtime compensation as well as reasonable attorney's fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. §201

et. seq. ("the FLSA"). (Doc. 17). This Court denied Plaintiff's first motion for default judgment due to issues with Plaintiff's affidavit and service of process on the Defendant limited liability company. (Doc. 9). Having corrected those deficiencies, it is recommended that Plaintiff's motion be **GRANTED.**

The Court finds that Defendants' failure to timely respond to the Complaint served to admit the well pled allegations of the Complaint. On November 16, 2021, Plaintiff filed suit against her former employer Defendant Elite Auto Services of Orlando, LLC ("Elite Auto"), a towing and auto repair company that provides "24/7 roadside assistance" in Orlando, Florida. (Doc. 1). Plaintiff was hired as a non-exempt, full-time employee to perform work as a tow truck driver, dispatcher, and roadside service technician in Orlando from 2019 to 2021. (*Id.* ¶¶ 7-8). Plaintiff alleges that although Elite Auto paid her on a "commissions only" payment plan for each service performed, she is also entitled to minimum wage compensation for the relevant time period when she regularly worked "5 days per week, from Thursdays to Mondays, from 6:00 a.m. to 8:00 p.m." for "14 hours each day"; she sometimes worked past 8:00 p.m. and through lunch. (*Id.* ¶¶ 10-13, 18-19; Doc. 17-1 ¶¶ 9, 11, 12).

During her employment, Plaintiff was paid on a "commissions only" payment plan of 44% for each service performed, with an established commission settlement period of one week. (Doc. 1 ¶¶ 9-10; Doc. 17-1 ¶¶ 9-10). She was paid

"commissions only" even though she was not a saleswoman and did not sell anything. (Doc. 1 ¶ 16; Doc. 17-1 ¶ 16). Plaintiff earned a weekly average of $750.00 in commissions from August 21, 2019, to March 31, 2020 (32 weeks). (Doc. 1 ¶ 14; Doc. 17-1, ¶ 14). After the COVID-19 pandemic began, Plaintiff's commissions were reduced, and she earned an average of $550.00 weekly, effective April 1, 2020. (Doc. 1 ¶ 15; Doc. 17-1, ¶ 15). Elite Auto did not compensate Plaintiff for overtime even though she worked more than 40 hours per week on average. (Doc. 1 ¶ 13; Doc. 17-1, ¶ 12).

Plaintiff has personal knowledge that Defendant had two or more employees engaged in commerce and had gross revenue greater than $500,000 during the span of her employment. (Doc. 17-2 ¶¶ 4, 7-8). Thus, Defendant falls within the definition of an enterprise covered by the FLSA, as defined by 29 U.S.C. § 203(r) and 203(s)(A)(ii) (defining a covered enterprise as one whose gross volume of sales made or business is not less than $500,000 annually).

**I.    Legal Standard**

The Federal Rules of Civil Procedure establish a two-step process for obtaining a default judgment. When a defendant fails to appear or otherwise defend against an action, and that failure is shown by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Following entry of the clerk's default, the

plaintiff must move for default judgment within 35 days. Fed. R. Civ. P. 55(b); Local Rule 1.10(c).

The court will not grant default judgment unless the allegations in the complaint present a "sufficient basis" for finding liability. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A sufficient basis exists when the complaint's well-pleaded factual allegations state a plausible claim for relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). Threadbare recitals of the elements of a cause of action do not suffice, and a court is not required to accept legal conclusions as true. *Centennial Bank v. Vazquez*, No. 6:20-CV-2237-ACC-EJK, 2021 WL 2815223, at *2 (M.D. Fla. May 5, 2021) (stating that a defendant, by his default, admits the well-pleaded factual allegations in the complaint, but not the legal conclusions). However, a claim has facial plausibility when the facts pleaded allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

Notwithstanding the propriety of default judgment against a defendant, it remains incumbent on the plaintiff to prove the amount of damages to which he or she is entitled. "While well-pleaded facts in the complaint are deemed admitted, [a plaintiff's] allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of

damages." *Virgin Records Am., Inc. v. Lacey*, 510 F.Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *Whole Space Indus., Ltd. v. Gulfcoast Int'l Prods., Inc.*, Case No. 2:09-cv-217-UA-SPC, 2009 WL 2151309, at *3 (M.D. Fla. July 13, 2009).

Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were speculative and not proven by a fair preponderance of the evidence).

The Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record[,]" even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See, e.g.*, *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such

that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id*. at 1232 n.13; *see also Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

**II.   Analysis**

    **A.   Effective Service**

Before entering default judgment, the court must ensure that it has personal jurisdiction over the defendant. *See Rismed Oncology Sys., Inc. v. Baron*, 638 Fed. App'x 800, 805–06 (11th Cir. 2015). Service of process is a jurisdictional requirement; therefore, courts lack jurisdiction over a defendant when the defendant has not been properly served. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Service of process is governed by Federal Rule of Civil Procedure 4, which allows a plaintiff to serve a limited liability company ("LLC") either by: (1) delivering the summons and complaint to an officer, managing agent, general agent, or any other agent authorized by law to accept service on the company's behalf, Fed. R. Civ. P. 4(h)(1)(B); or (2) following the state law where the district court is located or where service is made, Fed. R. Civ. P. 4(h)(1)(A), (e)(1).

Florida Statute § 48.062 governs service of process on limited liability companies in Florida. The statute sets forth the requirements for service of process on behalf of a limited liability company such as Elite Auto. Fla. Stat. § 48.062(1) &

(2). Process must first be attempted on the registered agent or "any employee of the registered agent." *Id.* Only "[i]f service cannot be made on a registered agent" of the LLC "with reasonable diligence," or due to the registered agent's failure to comply with the governing Florida Statute, is it proper for the manager to be served instead of the registered agent. *Id.*

In this case, according to the Florida Secretary of State,[1] the registered agent for Elite Auto Services of Orlando, LLC is Jonathan L. Wright at 3960 Silver Star Road, and the "Manager" is Daryll Ostrander at 3956 Silver Star Road, both in Orlando, Florida 32808. The process server went to 3960 Silver Star Road on Friday, December 10, 2021, in an attempt to serve Mr. Wright, but Mr. Wright was not there. (Doc. 17-2). Manager Daryll Ostrander was at the address, however, and the process server served him during regular business hours at 1:53 p.m.[2] According to Plaintiff's motion, service was sufficient under Federal Rule of Civil Procedure 4 because serving Daryll Ostrander after first attempting to serve the registered agent complies with Fla. Stat. 48.062(2). (Doc. 17 at 7-8). Given that Daryll Ostrander is listed on the Annual Report as a manager of the limited liability company, service

---

[1] *See* https://search.sunbiz.org/ and search for "Elite Auto Services of Orlando, LLC" (last visited on Oct. 12, 2022).

[2] The process server's original affidavit said he served Daryll Ostrander at 3956 Silver Star Road. (Doc. 7). Plaintiff now claims that was a clerical error. (Doc. 17 at 8).

upon him was sufficient after the initial attempt to serve Johnathan Wright under Florida law. Fla. Stat. 48.062(2).

### B.    Damages

Plaintiff now alleges that she is owed minimum wage and overtime compensation for her work during years 2019, 2020, and 2021[3] in the total amount of $18,091.80 ($16,041.00 in overtime and $2,050.80 in minimum wage), plus an equal amount in liquidated damages. (Doc. 17-1 ¶ 25).[4] Plaintiff also alleges that the exemption for employees paid "commissions" under the FLSA did not apply to her work. (Doc. 1 ¶¶ 16-17). Generally, under the FLSA, the employer must pay its employees a minimum wage. 29 U.S.C. § 206(a). In addition, an employer must pay one and one-half times the employee's regular rate for all hours worked in excess of forty hours per work week. 29 U.S.C. § 207(a). Employers who violate § 206 and § 207 of the FLSA are also liable to their employees for an equal amount in liquidated damages to the unpaid minimum wages and/or unpaid overtime compensation, as well as attorney's fees and costs. 29 U.S.C.A. § 216(b). The FLSA sets the minimum wage rate for claims brought under the Act, 29 U.S.C. § 206(a),

---

[3] While ordinary FLSA violations have a statute of limitations of two years, willful violations of the FLSA may be brought three years after the action accrued. 29 U.S.C. § 255.

[4] As explained below, Plaintiff's arithmetic is off. By the Court's calculation, Plaintiff is owed $18,175.80 of which $14,439.90 is unpaid overtime and $3,735.90 is unpaid minimum wage.

and the overtime rate is at least one and one-half times an employee's "regular rate," 29 U.S.C. § 207(a)(1).

An employee's "regular rate" has been construed by courts to be "the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). The regular rate is determined by dividing the employer's total compensation during the workweek by the number of hours worked. 29 C.F.R. § 779.419(b). Plaintiff avers that she worked a minimum average of 70 hours a week while employed by Defendant. (Doc. 17-1 ¶ 11). For the 32 weeks worked between August 2019 until April 2020, Defendant remitted $750 weekly in commission-only payments, which nets a regular rate of $10.71 per hour. (*Id.* ¶ 14). For the 72 weeks worked after April 2020, Defendant remitted $550 weekly in commission-only payments, which nets a regular rate of $7.86 per hour. (*Id.* ¶ 15).

Plaintiff alleged in her Complaint that the FLSA's exemption for commissioned employees, 29 U.S.C. §207(i), did not apply to her work. (Doc. 1 ¶ 16). Although a defendant, by its default, admits the well-pleaded factual allegations in the complaint, it does not admit the legal conclusions. *Centennial Bank v. Vazquez*, No. 6:20-CV-2237-ACC-EJK, 2021 WL 2815223, at *2 (M.D. Fla. May 5, 2021). The Eleventh Circuit has found that a "flat rate" payment plan from an auto service garage like the one in this case "constitutes a form of commission payment."

*Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1257 (11th Cir. 2001). However, the employee would still be entitled to overtime compensation under the FLSA unless the employer met the exemption requirements of § 7(i) of the FLSA. *Id.*

Section 7(i) of the FLSA provides the following:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. §207(i).

Here, Plaintiff alleges that commissions constitute her entire compensation from Elite Auto, which satisfies the second element. As previously discussed, Plaintiff's regular rates of pay were $10.71 and $7.86 per hour. "[W]hen a state law provides for a higher minimum wage than that set forth in the FLSA, the state provision controls." *Fernandez v. Belly, Inc.*, Case No. 6:05-cv-1074-Orl-31-KRS, 2006 WL 5159188, at *3 (M.D. Fla. May 23, 2006). Florida's minimum wage for 2019, 2020,

and 2021 was $8.46, $8.56 and $8.65 per hour, respectively.[5] Since Plaintiff's regular hourly rate never exceeded one and one-half times the Florida minimum wage—respectively, $12.69, $12.84, and $12.98 per hour—the first prong is not satisfied, and the § 7(i) exemption would appear not apply to Defendant.[6]

On the matter of damages, an evidentiary hearing is unnecessary because, as detailed below, the amounts Plaintiff seeks are for a sum certain, are subject to easy calculation, and are supported by sufficient evidence in the record. (Docs. 17-1); *see also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar. 25, 2019) ("A plaintiff may establish his or her damages by affidavit."). Such amounts include liquidated damages, which must be awarded "absent a showing of good faith." *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (citation omitted); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

---

[5] 2019 Minimum Wage Poster, Florida Department of Economic Opportunity (Sept. 30, 2018), https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2019-minimum-wage-poster/poster-fl_minwage2019.pdf?sfvrsn=2; 2020 Minimum Wage Poster, Florida Department of Economic Opportunity (Sept. 30, 2019), https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2020-minimum-wage/poster-fl-minimum-wage-2020-english.pdf?sfvrsn=2; 2021 Minimum Wage Poster, Florida Department of Economic Opportunity (Sept. 30, 2020), https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2021-minimum-wage/poster-fl-minimum-wage-2021-english.pdf?sfvrsn=74a4bb0_2.

[6] Arguments regarding the exemption were not litigated given Defendant's default.

First, Plaintiff worked for 72 weeks (April 2020 to August 2021) below the appropriate minimum wage at a rate of $7.86 per hour. For 39 of those weeks (April 2020 to January 2021), the minimum wage was $8.56 per hour, a difference of 70 cents per hour from what Plaintiff was paid. Seventy cents multiplied by 70 hours multiplied by 39 weeks is $1,911. For the remaining 33 weeks (January to August 2021), the minimum wage was $8.65 per hour, coming out to a difference of 79 cents per hour. Seventy-nine cents multiplied by 70 hours multiplied by 33 weeks equals $1,824.90. Added together, Plaintiff earned a total $3,735.90 in unpaid minimum wage.

Second, Plaintiff worked 70 hours a week for all 104 weeks of work (August 2019 to August 2021) without receiving overtime pay. For 2020, the difference between minimum wage and the overtime rate was $4.28. Accordingly, $4.28 multiplied by 30 hours multiplied by 39 weeks equals $5,007.60. For 2021, the difference was $4.33. As such, $4.33 multiplied by 30 hours multiplied by 33 weeks equals $4,286.70. Plaintiff additionally worked 32 weeks at a rate of $10.71 per hour. The overtime rate of one and one-half times that regular rate is $16.06, which means the overtime premium is $5.36. Accordingly, $5.36 multiplied by 30 hours multiplied by 32 weeks equals $5,145.60. In total, Plaintiff earned $14,439.90 in unpaid overtime.

All told, Plaintiff is owed $36,351.60 total in FLSA damages—$18,175.80 in unpaid wages, plus liquidated damages equaling that amount. Since the Court is considering default judgment, the decision rests entirely on the specific facts presented in this case as pled by the Plaintiff. Plaintiff's facts are unrebutted and the resulting analysis applies only to these unrebutted facts in this context.

### C. Attorney's Fees

In addition to unpaid wages and liquidated damages, Plaintiff seeks reasonable attorney's fees of $7,200. (Doc. 17 at 13-14). The FLSA allows "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In support of her attorney's fees request, Plaintiff has submitted the sworn declaration of counsel. (Doc. 17-3). Plaintiff's counsel, Zandro Palma, seeks an hourly rate of $400 per hour for himself, for a total of 18 hours billed in this matter. (*Id.* ¶¶ 12-13).

In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This amount, commonly referred to as the lodestar, is then adjusted to reflect the "results obtained." *Id.* at 434. In determining the lodestar, a reasonable hourly rate is based on the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills,

experience and reputation. *Gains v. Dougherty Co. Bd. of Educ.*, 775 F.2d 1565, 1571 (11th Cir. 1985).

"The [fee] applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman v. Housing Auth. of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988). Counsel's affidavit alone is generally not a sufficient basis for determining whether the fees and costs incurred are reasonable. *Id.* at 1299. However, the Court may use its own discretion and expertise to determine the appropriate hourly rate to apply for an attorney's fee award. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F. 2d at 1303; *see also Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

Plaintiff's counsel attached a detailed timesheet showing the total amount of time, 18 hours, that he worked on this case. (Doc. 17-3 at 7-9). Mr. Palma was admitted to the Florida Bar in 2006 and is the sole shareholder of his law practice, having represented parties in employment litigation for more than 16 years. (*Id.* ¶¶ 4-6). Prior to January 2021, counsel's hourly rate was $375, which has been found reasonable. *See, e.g., Abreu v. Free Flow Constr., Inc.*, Case No. 18-20244, 2018 WL 6492904, at *1 (S.D. Fla. Oct. 30, 2018). He avers that both the $400 an hour rate claimed now and the hours expended are reasonable. (Doc. 17-3 ¶¶ 14-16). The Court finds that the hourly rate for counsel, as well as the time expended, is

reasonable;[7] thus, attorney's fees of $7,200 is reasonable. *See Clough v. McClure Constr. Co., LLC*, 6:18-CV-2069-ORL-41-GJK, 2019 WL 1559661, at *4 (M.D. Fla. Mar. 25, 2019).

### D. Costs

Counsel has submitted an affidavit itemizing the costs sought, including a $402 filing fee, $75 for service of process, and $25 for copies. (Doc. 17-3 at 9-10). In FLSA cases, courts may tax those costs permitted by 28 U.S.C. § 1920. *See Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) (finding that "nothing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A § 1920."). The filing fee, cost of copies, and fees for service of process are recoverable and reasonable. 28 U.S.C. §§ 1920(1), (4).

## III. Conclusion

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 17) be **GRANTED**; and

2. A Final Default Judgment be entered against Defendant in favor of Plaintiff for $36,351.60 in FLSA damages, $7,200 in attorney's fees, and $502 in costs.

---

[7] Counsel's claimed rate for all the work performed in this case is on the high side for what is, after all, routine and repetitive litigation. However, in the absence of opposition (due to the default), the Court will approve the requested rate.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on October 17, 2022.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy